# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

DARIO RAMON OCHOA,

    Plaintiff,

vs.                                                                       Civ. No. 18-287 SCY

NANCY A. BERRYHILL, Acting
Commissioner of the Social Security
Administration,

    Defendant.

## MEMORANDUM OPINION AND ORDER[1]

**THIS MATTER** is before the Court on the Social Security Administrative Record (Doc. 12) filed June 13, 2018, in support of Plaintiff Dario Ramon Ochoa's ("Plaintiff") Complaint (Doc. 1) seeking review of the decision of Defendant Nancy A. Berryhill, Acting Commissioner of the Social Security Administration ("Defendant" or "Commissioner"), denying Plaintiff's claim for disability insurance benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq*. On August 16, 2018, Plaintiff filed his Motion to Reverse and Remand for a Rehearing With Supporting Memorandum ("Motion"). Doc. 15. The Commissioner filed a Brief in Response on October 16, 2018 (Doc. 17), and Plaintiff filed a Reply on November 7, 2018. Doc. 20. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). Having meticulously reviewed the entire record and the applicable law and being fully advised in the premises, the Court finds the Motion is not well taken and is **DENIED.**

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings and to enter an order of judgment. Docs. 4, 7, 8.

# I. <u>Background</u>

Claimant Dario Ochoa ("Mr. Ochoa") suffers from the following severe impairments: lumbar arthralgias; abdominal pain of unknown etiology; spine disorders; obesity; anxiety; and depression. Administrative Record ("AR") at 12.[2] He alleges that he became disabled at least as of March 1, 2011. AR 76, 77, 266, 1138. He completed high school and two years of college and had past relevant work as a driver for United Parcel Service ("UPS"). AR 230-31.

A. <u>Procedural History</u>

On April 1, 2014, Mr. Ochoa filed concurrent claims of disability under Title II and Title XVI. As of April 2, 2014, Mr. Ochoa was found to be disabled and awarded supplemental security income (SSI). AR 64-71. Mr. Ochoa's Title II application, however, was denied on August 18, 2014, and upon reconsideration on January 29, 2015. AR 77-78. Mr. Ochoa requested a hearing before an Administrative Law Judge ("ALJ"), and ALJ James Linehan conducted a hearing on January 11, 2017. AR 33-63. Mr. Ochoa appeared in person at the hearing with attorney representative Jonathan Woods. *Id*. The ALJ took testimony from Mr. Ochoa and an impartial vocational expert, Melissa P. Brassfield. *Id.* On February 9, 2017, ALJ Linehan issued an unfavorable decision. AR 10-19.

On January 26, 2018, the Appeals Council issued its decision denying Mr. Ochoa's request for review and upholding the ALJ's final decision. AR 1-6. On March 27, 2018, Mr. Ochoa timely filed a Complaint seeking judicial review of the Commissioner's final decision. Doc. 1.

---

[2] Mr. Ochoa has narrowed the issue before this Court to whether his mental impairments were at a disabling level of severity prior to his date of last insured. He concedes that "Mr. Ochoa does not claim that his physical impairments were disabling prior to the March 2011 [date last insured]." Doc. 20 at n.4 (emphasis removed).

B.     Medical Evidence

On October 9, 2007, Mr. Ochoa presented to UNMH Internal Medical, Dr. Howard Waitzkin, with a variety of complaints. AR 467. Mr. Ochoa reported that he had been suicidal after his divorce, but not recently. AR 469. "He was in counseling which helped. He is feeling better now emotionally." *Id.* "His depression seems to be improving to some extent." *Id.* Dr. Waitzkin noted that Mr. Ochoa experienced weight gain which "might be related to psychological issues." *Id.* On November 7, 2007, however, Mr. Ochoa denied having any depression to Dr. Waitzkin. AR 463. By December 2007, Dr. Waitzkin was of the opinion that Mr. Ochoa's many unsubstantiated complaints of pain were possibly due to somatization and he found it necessary to "frankly discuss the possibility of psychotherapy" with Mr. Ochoa. AR 461.

In August of 2008, UNMH rheumatology confirmed that Mr. Ochoa had "chronic pain syndrome without any clear etiology." AR 456. In November, Andrea Weiss, PA-C, noted that Mr. Ochoa suffered from an "[u]nexplained constellation of symptoms." AR 454. She explained: "I am not clear about the etiology of this, but I suspect that the patient does have some form of depression, which is untreated. He has declined mental health medication and referrals in the past." *Id.*

In early 2009, Mr. Ochoa expressed "that he has been so miserable that he wants to see a psychiatrist," an action PAC Weiss endorsed. AR 404-05. She described his symptoms as "psychosomatic" and opined that he "probably has some undiagnosed form of mental illness." AR 405. As for Mr. Ochoa's "continuing sleep problems," she "suspect[ed] that this is part of his undiagnosed mental health disorder which I feel is several fold, depression, somewhat anxiety and perhaps even a personality disorder and some hypochondriasis." *Id.*

3

In February 2009, the Gastroenterology Clinic saw Mr. Ochoa and noted that "[t]he patient thinks that he may have anxiety and depression and is working on this with Andrea Weiss." AR 393. The clinician Dr. Martin Kistin also noted that Mr. Ochoa "works part-time as a helper for a friend of his who does construction." *Id.* In the fall of 2009, Mr. Ochoa was still complaining of "some anxiety," AR 309, and Dr. Akshay Sood observed that "although he does complain of anxiety issues," Mr. Ochoa "has no known psychiatric illnesses." AR 384.

In June 2010, Mr. Ochoa presented to establish care with First Choice Community Healthcare complaining of muscle pain, aches, digestive problems, and fatigue. AR 303. Treatment notes describe him as "still disturbed" and not using anxiety medication because it bothered his stomach. *Id.* The assessment was back pain and depression and he was prescribed Prozac. *Id.* He continued to treat at First Choice, who refused to give him narcotics. AR 311.

On October 26, 2010, Mr. Ochoa presented to the UNM Emergency Department ("ED") suffering from substance withdrawal. AR 388. He had run out of his prescribed oxycodone two days earlier, and reported a recent suicide attempt because he was "afraid to live in pain." *Id.* At the same time, Mr. Ochoa "denied current h[istory] o[f] psychotic symptoms." *Id.* The RN noted he "reports withdrawal symptoms of back and stomach pain, nausea, joint and general body pain, along with increasing levels of depression and anxiety." *Id.* He was referred to the Bernalillo Metropolitan Assessment and Treatment Services ("MATS") Detox program, *id.*, but there are no treating records from this facility.

In March 2011, Mr. Ochoa was back at the Gastroenterology Clinic, where his psychiatric history was reviewed with the patient and was negative. AR 447. One of the diagnoses was instead "[c]hronic narcotic use." AR 448. On April 3, 2011, three days after his date of last insured, Mr. Ochoa again presented to the ED "because he ran out of his pain meds

4

and told them that he was suicidal, which is how he feels only when he runs out of his pain meds." AR 699. On April 4, he stated that "[w]hen he's on pain meds all is well, he's been on them for 6 years, when he's close to running out he feels depressed, and last evening he felt very badly." *Id.* The record indicated he had no past psychiatric diagnoses. *Id.* He reported he saw a therapist 7 years ago for depression and "mostly chronic pain" but it did not help. *Id.* "He doesn't want therapy as he's not ready to deal with his pain med addiction, and doesn't think that therapy works for him. Doesn't want behavioral health services." AR 701.

On the same date, CNP Jacqueline Stoll reported that "[h]e denies any difficulty with anxiety except when he is going through drug withdrawal" and diagnosed him with "Pain associated with psychological factors (307.8), Opiate induced mood disorder, [and] Opiate dependence." AR 802. Her qualitative assessment was Mr. Ochoa had a "[h]istory of suicidal ideation when in opiate withdrawal and a history of chronic pain as well as multiple other medical complaints of questionable origin." AR 803. She stated that Mr. Ochoa "is being referred for Crisis Counseling which he agrees to. Discussed with him the possibility of pursing counseling regarding his opiate use and problems it has caused him. He is not willing to consider antidepressant therapy at this time." *Id.*

In October 2012, Mr. Ochoa treated with Dr. Fawcell in the Department of Psychiatry. AR 797-802. Her notes indicate that Mr. Ochoa had undergone prior treatment for depression and had been prescribed medication with little effect. AR 800. She recommended psychotherapy and Mr. Ochoa expressed hesitation about having to travel from Moriarty to Albuquerque. AR 801.

In January 2013, Mr. Ochoa began psychotherapy in earnest, and there revealed that his anxieties had persisted since childhood. AR 364-65. In March, his psychotherapist, Dr. Nickell,

5

diagnosed him with PTSD related to childhood trauma and physical abuse. The diagnosis was based on "thoughts and feelings that he has been carrying with him for years." AR 357. In March and June, Dr. Nickell diagnosed him with "debilitating" social anxiety and recommended Mr. Ochoa apply to receive social security disability benefits because of "continued panic attacks without reduction in frequency or intensity." AR 347-51.

## II. Applicable Law

### A. Disability Determination Process

An individual is considered disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance benefits); *see also id.* § 1382(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals). The Social Security Commissioner has adopted the familiar five-step sequential evaluation process ("SEP") to determine whether a person satisfies the statutory criteria as follows:

(1) At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[3] If the claimant is engaged in substantial gainful activity, he is not disabled regardless of his medical condition.

(2) At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s). If the claimant does not have an impairment(s) or combination of impairments that is severe and meets the duration requirement, he is not disabled.

---

[3] Substantial work activity is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). Work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before. *Id.* Gainful work activity is work activity that you do for pay or profit. 20 C.F.R. §§ 404.1572(b), 416.972(b).

6

(3) At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement. If so, a claimant is presumed disabled.

(4) If, however, the claimant's impairments do not meet or equal in severity one of the listing described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform his "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [claimant] can still do despite [his physical and mental] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3), 416.945(a)(3). Second, the ALJ determines the physical and mental demands of claimant's past work. Third, the ALJ determines whether, given claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.

(5) If the claimant does not have the RFC to perform his past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); 20 C.F.R. § 416.920(a)(4) (supplemental security income disability benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5, 107 S.Ct. 2287, 2294, n. 5, 96 L.Ed.2d 119 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 801 (10th Cir. 1991).

### B. Standard of Review

This Court must affirm the Commissioner's denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Casias*, 933 F.2d at 800-01. In making these determinations, the Court "neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 2019 WL 1428885, at *3, __ S. Ct. __ (U.S. Apr. 1, 2019). Substantial evidence "is 'more than a mere scintilla.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record," *Langley*, 373 F.3d at 1118, or "constitutes mere conclusion," *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The agency decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005). Therefore, although an ALJ is not required to discuss every piece of evidence, "the record must demonstrate that the ALJ considered all of the evidence," and "the [ALJ's] reasons for finding a claimant not disabled" must be "articulated with sufficient particularity." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).

## III. Analysis

Using the sequential evaluation process ("SEP"), the ALJ found that Mr. Ochoa was not disabled prior to his date last insured of March 31, 2011. In support of his Motion, Mr. Ochoa argues that, because a determination of disability had already been made for purposes of Mr. Ochoa's Title XVI application, the ALJ was required to apply and follow Social Security Ruling (SSR) 83-20[4] and *Blea v. Barnhart*, 466 F.3d 903 (10th Cir. 2006), to determine the onset of disability instead of using the SEP. Doc. 15 at 9-11. Mr. Ochoa further argues that, in the face of ambiguous medical evidence with respect to the onset date, the ALJ erred by failing to call upon the services of a medical advisor. *Id.* at 11-14. For the reasons below, the Court rejects Mr. Ochoa's arguments.

A.  SSR 83-20 and *Blea v. Barnhart*

To qualify for disability benefits, a claimant must establish that she is "disabled" under the Social Security Act, 42 U.S.C. § 423(a)(1)(E) (the "Act"). The Act states that "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). In 1983, the Commissioner adopted Social Security Ruling 83-20 "[t]o state the policy and describe the relevant evidence to be considered when establishing the onset date of disability under the provisions of titles II and XVI of the Social Security Act (the Act) and implementing regulations." 1983 WL 31249, at *1. Social Security Rulings "are binding on all components of the Social Security Administration." 20 C.F.R. § 402.35(b)(1). "The onset date of disability is the first day an individual is disabled as defined in the Act and the regulations." SSR 83-20, 1983 WL 31249, at *1.

---

[4] SSR 83-20, "Titles II and XVI: Onset of Disability," 1983 WL 31249.

9

SSR 83-20 recognizes that determining the onset date of a disability is critical in many cases, and where the medical evidence does not establish a precise onset date, it will be necessary to infer the onset date from record evidence. *Id.* at *2. SSR 83-20 provides guidance for determining the onset date in cases of traumatic and nontraumatic origin. It explains that the onset date for a disability of traumatic origin is simple to determine: the onset date is the date of the injury. *Id.* at *3. Determining the onset date for a disability of nontraumatic origin is more complicated. In doing so, the ALJ must consider several factors: "the applicant's allegations, work history, if any, and the medical and other evidence concerning impairment severity." *Id.* at *2. Medical evidence is the most important factor in determining the onset date, and the onset date can never be inconsistent with the medical evidence. *Id.* The ALJ should adopt the onset date alleged by the individual if it is consistent with all of the available evidence. *Id.* at *3.

When the medical evidence does not establish a precise onset date, the ALJ may have to "infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process." *Id.* The onset date selected by the ALJ must have a "legitimate medical basis," and a "[c]onvincing rationale must be given for the date selected." *Id.* at *3. "At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred." *Id.*

*Blea v. Barnhart* is the controlling Tenth Circuit case addressing the application of SSR 83-20. 466 F.3d 903 (10th Cir. 2006). Mr. Blea applied for disability insurance benefits and supplemental social security income in March 2002, and alleged an onset date of June 1997. *Id.* at 906. His date of last insured was December 31, 1998. *Id.* Mr. Blea's applications were initially denied. *Id.* At reconsideration, however, the Commissioner determined that Mr. Blea was disabled and entitled to supplemental security income as of March 1, 2002, but that his

impairments were not disabling on any date through his last date of insured. *Id*. Mr. Blea requested a hearing with respect to the denial of his Title II claim, and the ALJ subsequently denied his claim. *Id*. at 906-07. In so doing, the ALJ did not determine an exact onset date pursuant to SSR 83-20, but rather applied the five-part sequential evaluation process and determined that because Mr. Blea retained the capacity for sedentary work as of his date of last insured, he could not have been disabled and was not entitled to disability insurance benefits. *Id*. at 907. The Appeals Council declined Mr. Blea's request for review. *Id*. at 908. On appeal, Mr. Blea argued, inter alia, that because the Commissioner found him disabled on his Title XVI claim, the ALJ erred by not applying SSR 83-20 to determine the onset date of his disability for his Title II claim. *Id*.

The Tenth Circuit agreed. The ALJ may not "make negative inferences from an ambiguous record" to determine the correct onset date. *Id.* at 913. "In the absence of clear evidence documenting the progression of [the claimant's] condition, the ALJ [does] not have the discretion to forgo consultation with a medical advisor." *Id.* at 911-12 (quoting *Bailey v. Chater*, 68 F.3d 75, 79 (4th Cir. 1995)). Whether the ALJ must call a medical advisor turns on whether the medical evidence of onset was ambiguous due to gaps in the available medical evidence. *Id*. at 911.

      B.     <u>Reversal is not required if there is no ambiguity in the medical records</u>

The holding in *Blea* turned on two salient points in that record: (1) the claimant sought no medical treatment during a time period that included his date of last insured; and (2) in order to resolve the ambiguity created by this gap, the ALJ made negative inferences against the claimant without calling a medical advisor. 466 F.3d at 912-13. In contrast, the present case does not involve any ambiguity in the medical records. Extensive records exist and those records support the ALJ's conclusion. Because the ALJ made a conclusion based on a review of medical records

11

that exist, not based on a negative inference drawn from the non-existence of records, *Blea* does not control the outcome of the present case.

More relevant to the present case is the Tenth Circuit's discussion in *Bigpond v. Astrue*, 280 F. App'x 716 (10th Cir. 2008).[5] *Bigpond* explained that *Blea* applies only when "there were no contemporaneous medical records for the ALJ to consider." *Id.* at 718 (citing *Blea*, 466 F.3d at 912-13). "In contrast," the Tenth Circuit held, "Ms. Bigpond has medical records both before and after" her date last insured. *Id.* Even if the claimant can point to some ambiguity in the medical records, "the ambiguity must relate to the relevant time period" in order to mandate reversal. *Id.* The relevant question under *Blea* is "'whether the evidence is ambiguous regarding the possibility that the onset of her disability occurred before the expiration of her insured status.'" *Id.* (quoting *Blea*, 466 F.3d at 911). Applying this inquiry to the specific facts in *Bigpond*, the Tenth Circuit considered, "whether the evidence shows any possibility that [the claimant]'s cardiac problems were disabling as of [her date last insured]." *Id.* Also in 2008, another unpublished Tenth Circuit decision indicated that *Blea* does not apply where the claimant "fails to show from the evidence that there was an ambiguous 'onset date' which required clarification." *Hill v. Astrue*, 289 F. App'x 289, 294 (10th Cir. 2008).

The Court concludes that, like in *Bigpond* and *Hill*, the error mandating reversal in *Blea* is not present here because "this is not a case where the medical evidence is ambiguous because adequate medical records are not available." *Bigpond*, 280 F. App'x at 718. The medical evidence does not contain ambiguity during the relevant time period, to include Mr. Ochoa's date last insured. While Mr. Ochoa is correct that his providers diagnosed him with mental health

---

[5] The Court may rely on unpublished opinions to the extent their reasoned analysis is persuasive. *See* 10th Cir. R. 32.1(A); *United States v. Austin*, 426 F.3d 1266, 1274 (10th Cir. 2005).

problems since at least 2009, Doc. 15 at 5, this argument misses the point. To mandate reversal under *Blea*, the evidence must be ambiguous "regarding the possibility that the onset of [claimant's] disability occurred before the expiration of h[is] insured status." 466 F.3d at 911 (quoting *Grebenick v. Chater*, 121 F.3d 1193, 1200-01 (8th Cir. 1997)). Remand is also required if the unambiguous evidence demonstrates that the claimant was disabled before his date last insured. But neither situation is present in this case.

"'Disability' is defined as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Bigpond*, 280 F. App'x at 718 (quoting 42 U.S.C. § 423(d)(1)(A)). The medical evidence relating to Mr. Ochoa's mental health between 2009 and April 2011 (a time period which includes his date of last insured) is not ambiguous. In 2009, as the ALJ noted, Mr. Ochoa was noted to have "some undiagnosed form of mental illness." AR 16; *see* AR 384 ("although he does complain of anxiety issues," Mr. Ochoa "has no known psychiatric illnesses"). In January 2008, "[h]e was diagnosed with chronic pain syndrome without any clear etiology" and in January 2009, he "was diagnosed with psychosomatic symptoms . . . and some undiagnosed form of mental illness." AR 16. In 2010, Mr. Ochoa "complained of increased depression and anxiety due to opioid withdrawal symptoms." AR 17. In October 2010, he presented to the emergency department "with complaints of opioid withdrawal symptoms" and "increasing depression and anxiety." AR 16.

Finally, the ALJ noted that "three days *after* his date last insured, the claimant treated at UNM emergency department with complaints of opioid withdrawal symptoms and suicidal ideation." AR 16 (emphasis added). A day later, "he treated at behavioral health with complaints

13

of difficulty sleeping due to chronic pain and a low energy level, but he reported he had good concentration and a very good mood." AR 16. "He also denied any difficulty with anxiety, except when he was going through withdrawal." *Id.*; see also AR 699 (Mr. Ochoa is depressed and anxious "only when he runs out of his pain meds" and "[w]hen he's on pain meds all is well" but "when he's close to running out he feels depressed"). "His mental status examination revealed he had relaxed and cooperative behavior, a euthymic mood, normal speech, no thought disorders, and fair to poor judgment and insight." AR 16. "He was diagnosed with pain associated with psychological factors and an opioid induced mood disorder." *Id.* (citation omitted).

The ALJ's narrative demonstrates the lack of ambiguity in Mr. Ochoa's medical history during the time period which includes his date of last insured. The record provides substantial evidence in support of the ALJ's decision. Mr. Ochoa's providers performed extensive tests but found no severe medically determinable mental health impairments aside from his opioid addiction. The medical evidence "fails to show a possibility that [Mr. Ochoa]'s [mental health] problems were *disabling* as of [his date last insured]." *Bigpond*, 280 F. App'x at 719. Mr. Ochoa's emphasis that his anxiety problems stem from his childhood, Doc. 15 at 12-13, only underscores the point. He has not been *disabled* since childhood. There was a point—a date of onset—when the impairments presented at a disabling level of severity. The unambiguous medical evidence places this onset date after Mr. Ochoa's date last insured. Because there was no ambiguity in the medical records, the ALJ likewise did not err in failing to call a medical advisor. *Blea*, 466 F.3d at 911; *Bigpond*, 280 F. App'x at 719.[6]

---

[6] On October 2, 2018, the Commissioner rescinded SSR 83-20 and replaced it with SSR 18-01p. *See* "Titles II and XVI: Determining the Established Onset Date (EOD) in Disability Claims," 83 Fed. Reg. 49,613, 2018 WL 4694326. SSR 18-01p applies "to new applications filed on or after

## IV. Conclusion

For the reasons stated above, Mr. Ochoa's Motion to Motion to Reverse and Remand for a Rehearing With Supporting Memorandum (Doc. 15) is **DENIED.**

**STEVEN C. YARBROUGH**
**United States Magistrate Judge,**
**Presiding by Consent**

---

the applicable date of the SSR and to claims that are pending on and after the applicable date" of October 2, 2018. *Id.* at 49,616. "This means that we will use this SSR on and after its applicable date, in any case in which we make a determination or decision." *Id.*

Unlike SSR 83-20, SSR 18-01p expressly permits the ALJ to "infer" an onset date and emphasizes that the decision to call on a medical advisor "is always at the ALJ's discretion." *Id.* at 49,615-16. Thus, if Mr. Ochoa were to prevail on his argument that the case must be remanded for failure to call a medical advisor, on remand SSR 18-01p would apply and the ALJ would not be required to call a medical advisor.